We'll then call the final argument for the day, United States of America v. Sean Gerard. Mr. Manning, may I please the court? I'd like to reserve five minutes for my rebuttal. Thank you very much. The government's key witness in this case testified that she had no personal knowledge as to the events that occurred leading to the death of Mr. Alfred Hendricks, which is in violation of Rule 602 of the Federal Rules of Evidence. What did she testify to before the grand jury? She testified to the grand jury that she actually did have personal knowledge. She testified to certain details at the grand jury. At trial, she testified that subsequent to the events that occurred in this case, her boyfriend came to travel to her residence miles away from where the incident occurred and gave her the details or told her exactly what happened in this case. So she goes to trial, she testifies in trial that she had no personal knowledge. At that point, it's our belief that based on Rule 602, she should have been precluded or her testimony at that point should have been... ...at the grand jury or would have been at trial. So what did the trial judge, how did the trial judge err? She erred in this case because she found that she introduced the grand jury testimony as substantive evidence without first making a finding that the government had met their burden under 602-104-A. In that case, and I'll cite Miller v. Keaton, which requires that the proponent of the evidence would have to meet proponents of the evidence standard, which in our view would be government at that point would have had to have... But why couldn't it come in under 801, under 801-D1? Well, it could have come in under 801-D1-A. However, what would have had to happen is she would have at that point had to have established personal knowledge. And that's not what occurred in this case. It would have had to be personal. However the evidence would have come in, the underlying premise of the evidence of those statements would have had to be rooted in a person who had firsthand knowledge. In this case, bringing in the grand jury testimony, her own grand jury testimony, which would have meant that she would have had to observe the evidence in the first instance. But she said she did. She testified that she did at the grand jury. It just seems obvious that when a witness goes south on you, this is what you do. You bring out their prior testimony, you impeach them with it. Right. What's unusual about that? Well, the problem is, based on a Miller decision, you basically have to meet the preponderance of the evidence. There has to be proof that this person, or the greater weight of the evidence in this case would have had to be that she had personal knowledge. On the one hand, she says she doesn't. On the one hand, she says she does. So at that point, we believe it just cancels itself out. They would have had to have 1% more, or more evidence suggesting that she was there. But in exercising its discretion, can't the district judge make a credibility determination? Well, in this case, she could have. However, well, in this case, it's our position that based on a Miller decision, where you have to meet the preponderance of the evidence standard, there had to be something more than yes and no to get you to the point that establishes the person. But what if you don't believe no? Well, there was no evidence in this case that... Well, I'm talking about credibility. Right. When you say you're saying that the evidence was equally balanced, and the trial judge has a discretionary decision to make on whether the witness had prior knowledge or not. Right. Can not credibility be a factor in the trial judge's determination? It can, Your Honor. However, what we basically have in this situation is grand jury testimony, where the trial court at that point did not observe the demeanor of the witness. And then we have now the witness on the witness stand. The only answer that was given on the witness stand for the court at that point to make a decision on is when she testified I was not at the scene of the incident. I mean, there's nothing more than that for the court to... But if the judge doesn't believe her, then hasn't that switched the preponderance of the evidence? Well, I mean... From equipoise. Right. You know, we don't believe that there was enough evidence on the record at that point to make a decision one way or the other. I mean, all you have is the witness suggesting that I was not at the scene of the crime. That's it. That's all you have. So any time a witness tells two different stories, the impeachment can never come in, because you're always going to have 50-50 stalemate. Well, you can impeach. However, you can impeach the witness. However, there has to be a foundation. There has to be a foundation laid suggesting that personal knowledge is... The evidence that we're getting in purport to the jury, there is personal knowledge there. And why isn't the foundation the witness's prior testimony under oath that she had personal knowledge? Right, because... That's foundation squared, isn't it? Well, at the end of the day, there has to be the greater weight of the evidence, when you have two competing sides, has to be weighed on the side of, yes, she does have knowledge. I mean, if you've got one situation where the witness comes in and she testifies that, yes, I was there, and another situation where she testifies, no, that she was not there, then what evidence would push us over the threshold suggesting that the witness actually has the... Well, let's flip it around. Witness goes before grand jury. Witness is scared. Witness lies to the grand jury, says, I don't know anything about this. Right. Witness later is presented with wiretap evidence that she full well knows what happened. Witness, quote, gets religion, is willing to testify in open court that, in fact, she does know what happened and hears what happened. So defense counsel then moves in limine to preclude that testimony because the witness doesn't have personal knowledge, because the witness previously testified before the grand jury that she doesn't know what happened. Right. Well, at this point, there's other corroborating evidence that suggests that we have met our burden, that the witness does have personal knowledge, and those are the wiretaps. There's independent evidence outside of a yes and a no that would now suggest that the evidence the governor's reporting... Well, what if she's lying in the wiretaps? Who knows? Well, I mean, that's independent evidence that would now suggest that... Well, then take the wiretaps out of my hypothetical. She has a pang of conscience, or she's no longer afraid. She goes to the police. She says, I'm sorry I lied in the grand jury. I witnessed it, and I'm willing to tell you what happened. Well, in that instance, we would posit or submit to the court that there has to be... Well, in this case, there would have to be something that corroborates the fact that she or this witness or this witness or the evidence that they're reporting to be what they say it is. So it's not enough for the witness to get on the stand and say, here's what I witnessed. Here's what happened. The judge is supposed to examine whether there's some other corroborating evidence to support the legitimacy of that testimony before it's admitted. Well, if the witness is suggesting... Well, the witness herself could establish facts outside of a yes or a no to suggest that she's actually there. If, for example, she was not at the scene of the crime, okay? For example, let's assume that she was there. She goes to the grand jury. She says she was not. But didn't the witness here go to a third party shortly after the murder and describe what happened? In this case, she actually... A third party went to her, her boyfriend. All right, and she described what happened. The boyfriend described to the witness what happened. But she described to someone else what happened. And after he left, she described to a police officer. That's correct. And she testified that the information came to me from my boyfriend, and that's a source of the information that I have. So what we know from that chronology is that she told the story as an eyewitness account at least twice, right? Once to a law enforcement officer, and had she been deceiving a law enforcement officer, she could be subject to prosecution for that. And she told the story as an eyewitness under oath before the grand jury. Is that correct? That's correct. All right. So, again, getting back to this preponderance of the evidence question and the role of credibility in the threshold determination by the trial judge as to admissibility, doesn't that seem to suggest a reason why the earlier account might wait sufficiently over the later account to be admitted for impeachment purposes? Well, the issue with that is the fact that she explains to the court, and she explains on the record, under oath, exactly how that information came about, how she got all the information to her. All right, thank you. We'll have you back on rebuttal. Mr. Manning, Mr. Andrews. May it please the Court, Alfonso Andrews, on behalf of the appellee, United States of America. Your Honor, I'll ask this Court to address the or to analyze the issue that's before it and has been raised by the appellant by first considering the application of 801 D1A, because I think that's the rule that permitted the admission of the testimony in this case. All right, so track the language of 801 D1A if you would, or D1, and indicate how the terms of that rule are consistent with admissibility. Yes, Judge. 801 D1A requires the following factors be met before a prior statement can be admitted. The declarant has to testify at trial. That happened in this case. The declarant must be subject to cross-examination concerning the prior statement. We need to keep in mind here that the prior statement that we're speaking about is actually this witness's grand jury testimony that occurred, I believe it was May 16th, May 19th of 2009. The witness in this case was subject to cross-examination concerning her statement because the defense counsel asked her questions concerning what she testified to in the grand jury during his cross-examination of her. The other thing is we have to show the statement is inconsistent with the declarant's trial testimony. So then, the prior statement, which is the grand jury. That's mad hard here. She said the exact opposite. Precisely. And then the statement, of course, must be given under oath, which it was in the grand jury. Now what counsel is doing is he's saying, well, that's all true, but she had no personal knowledge. If he's allowed to do that, your honors, 801D1A, as far as its intent, would be severely undermined. This court in, I think it's Iglesias, stated that that rule, 801D1, is designed to protect a party against the turncoat witness who changes the story on the stand and thus deprives a party of essential evidence. So we have a witness who goes into the grand jury. She gives a version of the events. She says she was there. And now she comes to court and she says, oh, I wasn't there. I think we all would agree that if Ms. Hughes had simply said, everything I said in the grand jury was a lie, we won't be here. But now if she adds to that, well, you know, everything I told them, I really didn't know. Someone else told me. Well, that is also inconsistent. But if you follow the appellant's reasoning, whenever a witness then shows up at trial and the inconsistency consists of the witness saying, I had no personal knowledge, the proponent could never get that evidence out. We will never meet the requirement of 602 under that scenario, the way this is being read. And so it's the government's position that, sure, any witness must have a personal knowledge of what he or she is testifying about. But this court should look not to the trial testimony, but to the testimony in the grand jury itself, the evidence that the government was trying to put in to see whether or not it was personal knowledge. And I think that's clear from the grand jury testimony itself. So our position is that there is no need to weigh the trial testimony or the trial denial of personal knowledge vis-a-vis the assertion of personal knowledge in the grand jury. Instead, what the court needs to look at is the grand jury. Now, if within the grand jury testimony itself it was clear that she had no personal knowledge, then we'd have a different issue. But that's not the case. So we submit that this whole issue of 602 really is a non-issue. The court should analyze this under 801D2. We think the facts clearly show that all the elements of 60801D1 was met. I'll also mention in this case that the government still maintains that it's not that clear that the issue of personal knowledge with respect to the grand jury testimony was raised in the trial court in the first place, such that the court would be triggered to make any sort of determination. There was objection to her testimony, was there not? Yes, but almost every time. Initially, when he objected, he said, well, it shouldn't come in because it wasn't subject to cross-examination. And that's found in the appendix on page 201 and 202. The second time he objected, he says, there was no cross-exam in the prior proceeding. And in any event, it couldn't be used substantively. And that's when the court ordered us to do the briefing, which we did the next day. When we got there the next day, the third time he objected, and this is in the appendices on 219 and 220, he objected based on Crawford, Sixth Amendment, due process, and that it was cumulative. Again, nothing about personal knowledge. The fourth time he objected, and by this time, the court had sort of already ruled that it was admissible. That's the first time when he mentioned anything that would come close to what appendices are arguing. Then he said, Judge, he said, lastly, and that's on page 221 of the appendices, in the appendix he said, lastly, Judge, we object based on the hearsay as to what the boyfriend told her. And quite frankly, you know, it's still unclear as to what he's talking about trial testimony, or grand jury testimony, because in terms of any testimony that dealt with the subject of what the girlfriend told her, that only happened at trial. And so, you know, that argument wasn't really developed below such that the court could, was forced to make a decision as to whether or not to witness that personal knowledge. But be that as it may, the government's main point here is that the court should be looking at the testimony itself, the grand jury testimony itself, to determine the existence of personal knowledge. And I think if you do that, it's clear that, in fact, there is more than enough evidence with respect to the witness's personal knowledge. If the audience have no further questions, then we'll ask that the court perform the judgment below. Thank you very much. Mr. Andrews, Mr. Manning? At trial, Mr. Gerard's trial counsel did object to the introduction of that testimony under, he cited 603 in that case, but, you know, it's clear, he also said personal knowledge, but he meant 602. In this case, the witness clearly suggested that she was not there, she had no firsthand knowledge, and she explained the source of the information that she got. Based on that, I think that outside of a traditional, you know, here's the introduction, we're looking at, had it been that she testified that, yes, I was there, something to put her at, actually at the scene where she was actually there, and she changed her testimony to 801, you can come in and get the grand jury testimony, but she actually explains that I got this information, I have no firsthand information, I got this information from an individual that we know from the trial transcript who was actually there. What's your response to Mr. Andrews' argument that if we interpret 602 as you request, that it will essentially write 801D1 out of the evidence book? Well, not exactly, and the reason is you can get the grand jury testimony in 801D1A, I have no objection, I mean, no quorum with that, but what you're actually bringing in is hearsay testimony from the grand jury, because that's what she actually reported to the grand jury was testimony that was given to her. Now, if you're just going to bring the grand jury testimony in, there's no issue with that. If there's a witness that comes in and she testifies that, look, I have a memory loss, or I somehow contradict one of the facts that I gave to the grand jury, now you can bring it in. But in this situation, you're actually contradicting, she's actually contradicting the entire testimony from the grand jury. So in that situation... She can come in, but if it's completely inconsistent, it doesn't come in? Well, at the grand jury, before she could even testify as to any of the facts, they had to establish that, number one, she had some first-hand knowledge. So if you're going to go to the actual root of first-hand knowledge, then at that point, there has to be some determination as to whether or not we believe first-hand knowledge exists in this case. No judgment.